Good morning, Your Honor, Mr. Police Court. The initial issue that I'd like to address in this appeal deals with the charge of the criminal of sexual conduct and that the charge should fail as a matter of law. I think that the dissent of the three-judge panel at the point of law, which was really significant, which is that it isn't just an interpretation of the word engage that is really as important here as much as it is that the statutory definition of sexual penetration requires that it be, it is defined under Guam law, section 2510 and as reflected on the opposing party's brief at page 40, sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body. And in this particular case, what we have is the insertion of the finger of the alleged victim into her own vaginal opening, which is not another person's body. And I believe that Judge... In other words, she just was overseen amusing herself. Is that what you want this court to say? Is that what you've come here to argue? That she just happened to be overseen amusing herself? Your Honor, I'm not going to say that this was... Of course she did. She was forced to do it. And doesn't force it into this equation? Judge Ferris, I'm not saying that this isn't despicable behavior. But what I am saying is that even aside from the fact that it may be despicable behavior, we have a duty to... Everybody's entitled to defense, and I'm not suggesting they're not. But when you started out, it was as if somebody just happened to peek in the window. And you know that's not the case. No, and I'm not suggesting that it is this case. But what I am saying is that just as much as we will hold other people to the standard of the law, we should hold ourselves to the standard of the law also, which is that if the elements of the crime simply don't exist, that we have to find that the charge is invalid. And even if it is that we find that the conduct itself is absolutely despicable, you still have to follow the law. And in this particular case, the law requires the insertion of a part of one person's body or an object into another's. And that's not what happened here. And I'm not saying that the conduct that the jury found to have occurred is not despicable. I'm simply saying it is not. It doesn't match the elements of the offense. Let's assume you had a different set of facts, that instead of inserting a finger, she took poison. He had the gun on him. He says, take this poison or else. She took it. Could he appropriately be charged with murder? It would depend upon, I guess, the wording of the... Well, she did it herself. I guess it would depend, though, upon the wording of the particular homicide statute, Your Honor. And, Your Honor, I'm not trying to be facetious or in any way to minimalize that this cut itself is reprehensible. I'm not saying that. But this is still an interesting hypothetical. Suppose the statute says homicide is to inflict force on another person, causing that other person's death. And the other person's have the facts as stated by Judge Farris. It wouldn't be homicide? I don't believe so under those circumstances. You could kill somebody that way and there'd be no... It's kind of unbelievable. That's why, generally, law is framed in a way that there are causation... There's causation language which is inputted into the statute. And that is something which doesn't exist in this particular case. Something which existed in the California case that was referred to in our brief, which is the Keeney case, where there is a causational requirement. And when you have a causational requirement, I believe that, consistent with that, you could, I suppose, hold someone to be responsible. But there is no causational language in this particular statute. The statute itself simply requires the proving of absolute circumstances. And I think that the circumstances, as the dissent at the District Court Appellate Division found, just simply don't exist in this particular case. Judge Nielsen, I think, quite correctly pointed out that aside from all of the argument about causation or what constitutes engage, simply the one particular factual requirement of penetration of another person simply did not occur in this particular case. And that that simply is why it is that the charge could not be sustained. How about the deference that we owe to the Appellate Court in Guam? Don't we defer pretty substantially to their reading of Guam law? I don't believe so. I believe that the standard is de novo review and that under de novo review, you undertake it as if you were taking this case from its inception. What about Schenck against Guam? I'm sorry? Schenck against Guam seems to state a deferential standard of review. I don't believe that's the proper standard. I believe the proper standard is de novo. The next issue that I think is that I would address in order is the issue of the restitution. In this particular case, I think that it is abundantly clear that there was a denial of due process. It's a constitutional issue that in ordering that Mr. Kitajai have to pay restitution, he is sentenced to a period of 120 years based upon his age at the time of having been tried and sentenced in his late 20s. He's simply going to be unable, as a matter of law, to pay any restitution. He would have to survive. Even if he were allowed parole at two-thirds of the 120-year sentence, which would be 80 years, he would have to survive being a centurion in order to be able to do anything about paying restitution. It's not unheard of that individuals come into money while they're incarcerated, is it? No, Your Honor, but we also by statute prohibit the imposition of restitution upon people who are indigent. We don't look at it from the standpoint of may you always be an indigent. We look at the standpoint of do you have the ability to pay at the time of the imposition of the restitution order? What case are you relying upon for that argument? Well, it's provided in the statute relative to fines and restitution for Guam. In the Guam statute? Yes, Your Honor. Which statute is that? Guam Code Annotated Section 80.52? I believe that it may be, yes. The court shall not sentence an offender to pay restitution unless the offender is or given a fair opportunity to do so, will be able to pay the fine or restitution. That sounds like present tense as well. I mean, a future tense as well as present. Excuse me, will be able looks into the future. And I don't think that under the circumstances that Mr. Kitachai lives under, which is that he his potential for inheriting something is very low. I don't think there was any proof before the trial court that he has some potentiality of coming into some great sum in the future. Was that issue raised at all? That's part of the difficulty. It does not appear that this I was not the counsel of the trial. The issue was not raised directly. However, it was addressed in the pre-sentence report, which was given to the trial court judge. With no objection? Without objection. And so we're reviewing for plain error? Correct. However, I do believe that this is an issue of plain error. And I believe this is an appropriate situation for the court to evoke. It's a plain error of power. This is a very egregious requirement to impose upon him the obligation to pay something that he cannot pay. As a prisoner, he earns a very nominal sum of money on an annual basis. And to take that money away from him, I think it constitutes cruel and unusual punishment under the Eighth Amendment. I believe that it's an imposition of a fine which is just excessive based upon his ability to pay. The last issue that I intended to address is the issue of the motion for new trial. I understand that the trial court, upon finally holding a hearing, found that the brother perjured himself relative to his recantation of his brother's participation in the robbery. I think that the issue really isn't limited simply because the trial court judge made that finding. The testimony of one's sibling is probably the most tempting testimony that could be admitted in a trial. And the trial court evidence relied very strongly upon the testimony of the defendant's brother in order to convict the defendant. There was, as the brief points out, as to the various robberies, much conflicting evidence relative to identifying my client as having been the actual robber of the various entities. And it is only because of the testimony of the brother, Gerard, that Joseph, I believe, was convicted. That's all very true, but it was the brother's recantation was pretty unconvincing. And that's true, but it could be that it's unconvincing for a variety of reasons, Judge Noonan. And that is that he may be protecting somebody else other than his brother, Joseph, relative to the actual participant in the crime and not wanting to expose that other person would be able to be flushed out through cross-examination. There may be, for example, another brother who was involved in the actual robberies who Gerard is trying to protect as opposed to his brother, Joseph, who already is. Except for the in the course of fleeing the entity, I think that the primary evidence as to all of the other institutions that were robbed came from the testimony of his brother, Gerard. I'm not suggesting which is primary. The trial fact decides how to rate it. I'm just asking if it was there. If there was anything in this record other than the testimony of other witnesses, however, it was pointed out relative to many of those other witnesses that at previous times they had identified other people as the persons responsible for having committed the offense. And so their testimony, I think, was substantially in question. And based upon that, it was really the testimony of his brother, Gerard, which was of the most damning evidence that was presented at trial. As I said, in all the years of trying cases that I've ever had, I think the testimony of one's siblings or another family member is considered to be the most damning. I see that I'm required to sum up. I'd like to reserve the balance of my time for rebuttal. Thank you, Your Honor. Good morning, judges. My name is James Vassal-Mallin. I apologize to the Court for confusion over who is going to argue this case on behalf of the people of Guam, and I'm here to do that this morning. I'm going to digress a bit from the Mr. Vanderbilt took in there. I believe the first issue he's addressing is the denial of the trial court motion for new trial. I believe it was very well pounded. I want to focus and say before we get into the Krasny and Larrison analysis, which applies only to the fifth prong of the U.S. v. Cervantes test, I say we have to look at the other prongs first. The first one is, was it really newly discovered evidence? I'm not convinced. The crux of that is, throughout the defendant's brief, there was extensive cross-examination where apparently the defendant was trying to punch holes in his brother's testimony. So we would argue that he knew beforehand that he didn't believe his brother or that he was trying to completely discredit his brother while he was on the stand. I'm going to come back to that here in a minute. We wanted to concede the due diligence on behalf of the defendant. However, on the third prong, that the evidence relied on must not be merely cumulative or impeaching. And this, the trial court judge hung his hat on, his first hat, by finding that, in his opinion, the extent of the new evidence, the recanting testimony by Gerard Kittichai, was merely impeaching testimony. In other words, he came up there and said, everything I said before is a lie. The trial court is the correct court to determine the veracity of the witness. The trial court was able to look at the demeanor of the witness, listen to everything he had to say, the manner he said it, and more importantly, it was the same trial court that had heard the same witness throughout the trial being attacked on cross-examination, and then the trial court makes the determination that he's lying the second time he gets on the witness stand. And this is very problematic, because when you get to the fifth prong, the first element you must look at is, was the testimony perjured? And that's when we get to the Krasny or Larson analysis. I would argue that under the Ninth Circuit, the Krasny case, we need to look at the probability of the necessity for a new trial, or whether it's probable that the defendant would win at a new trial. In Krasny, there are many circuits that have applied the modified standard when the newly discovered evidence indicates a government witness committed perjury at the trial. The question here is, when did Gerard Kitajai lie? The trial court judge made that determination. In looking at the recanting testimony, and I believe Judge Farris questioned the defense counsel on this, it wasn't just the fact that he recanted. The defendant came up, Gerard Kitajai came up with this wild, very unbelievable story of James. I don't know his last name. No, I don't know where he lives. He's a stranger I ran into at the Happy Karaoke Lounge. And James and I agreed to go out and commit a series of robberies. Compared to Gerard's testimony during the trial, where he's adamant, this is what happened, this is how he got involved in the crimes, this is why he went out and committed the robberies. I was the driver. My brother Joe would go in and commit the actual robbery. At this time, I believe it's critical to look at all of the evidence that he has. It wasn't just Gerard Kitajai's conviction of his brother Joseph. I would agree with counsel that there are few things more damning than a co-defendant brother pointing the finger at the defendant on trial and saying he was with me during the robbery. But one of the few things that is more damning is a victim eyewitness sitting in the witness stand saying, that's the man that robbed me. That's the man that pissed with me. That's the man who forced me to take off my clothes and violate myself. That, I say, is more damning. That occurred to 14 of the 19 victim eyewitnesses who testified to that. There is clear eyewitness identification of the defendant during the course of the trial. Every single one of the victim eyewitnesses from all nine of the robberies identified the defendant as the perpetrator. All nine robberies. Further, the modus operandi was very similar in all nine robberies. And if we start with the Alpha Ensure robbery, that's the one where Joseph Kitajai,  and in that case, the witnesses, the victim witnesses, take the stand and talk about how a man with long black hair comes in. He has medium height and a build leaning a little on the heavy side. He has a silver gun. He hits the victims on the head, forces them to lie down, and then go hide in the bathroom until I leave. That's Alpha Ensure. There's no denying, there's no debate, that's Joseph Kitajai, because he's caught right outside the business. Ironically, that's the same MO in all other eight robberies. Not just that the man would come in with a silver gun, but he would force them to lie down, face down. And the interesting one was, he kept telling them, go to the bathroom, stay in the bathroom until I leave. Fourteen out of the nineteen victim eyewitnesses testified against Joseph Kitajai. Yes, the testimony of Gerard Kitajai was told to the government's case, but it was not necessarily critical. It was not the lynchpin that the defense raises today, or in his briefs. In his briefs, the defendant makes a fact that some of these victim eyewitnesses had difficulties with the photo lineups. However, as he stated in our briefs, the photos were normally driver's license photos, passport photos, and just not very good representations of the actual individual. The actual eye-to-eye contact of the victims with the man who had robbed them I believe is more compelling. Concerning the second issue that was raised in the brief on the criminal sexual conduct, I believe it is a crime when a defendant forces another to engage in sexual penetration of another's body. I agree that the causal language as found in the California statutes would be helpful. We wouldn't have to even be here arguing this matter, this issue, this morning. However, I argue that it's not necessary. The language in the statute is very clear. A person is guilty of criminal sexual conduct if he engages in sexual penetration with the victim. The key in the statutory definition is sexual penetration, which is defined in the Guam Code. Sexual penetration means any intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of another person's body. There is no requirement that it's between two people. One person forcing another to violate themselves is not just despicable conduct. It is criminal conduct. What case authority are you relying upon to support your argument that the word other doesn't mean that a second person has to be involved? The two cases that were cited, the main cases that were cited, of course, are Wilson and Keeney. And the Wilson case is the Michigan case, which is a statutory language that is very similar to Guam's statute, where you use the word engaged. Does it have a similar definition of sexual penetration? I'm not aware. I apologize. You know, just so Arnold Budley can answer it. Other suggests that there are at least two actors, doesn't it? Yes. But other may not suggest that one must be the penetrator and the other the penetratee, if there are two actors. And that's the position the people take, Your Honor. And if you didn't, you would now. Thank you for the assistance. And the statute says any intrusion, however slight. And it says of any object. Now, granted, an argument can be made that they were thinking of an inanimate object. But that's an argument. It is not necessarily the facts of this case and that a woman who has to use her fingers to penetrate her genital openings under force or threat of death is a crime. The last point I will make this morning, Your Honor, concerns the restitution issue that was raised. As we stated in our briefs, there was no timely objection to this issue during the trial or in sentencing. And I believe it is inappropriate to raise this at such a late moment. Mr. Vanderbilt was not trial counsel at the time. However, defendant, his capable attorneys saw no reason to raise an objection. Well, counsel, the fact that he doesn't raise it doesn't mean that we don't reveal it. We reveal it for plain error. And so what's your argument in response to opposing counsel's position that there's a due process violation, that the decision of a court to impose restitution was not plainly erroneous? Well, because it was not, Your Honor. Just because the defendant doesn't have a dollar in his pocket today doesn't mean he's not going to have a dollar in his pocket tomorrow. And Mr. Kedichai, we hope, is going to be in prison for a long time and he can continue to pay it all off at one time. He has, we would argue, that he would have favorability No. The argument, though, is that you'd never have an indigent person if we followed you because it's impossible to say what's going to happen in the future. Isn't that so? Yes, Your Honor. So you'd never have an indigent person if we followed your argument that, okay, there's no penny today, but you don't know what he's going to have in the future. You can always say that, can't you? Yes, Your Honor. However, although he might be indigent today and possibly not indigent tomorrow, the true question I would say is that in the course of the time he is given to pay back the $6,000, he could come into that money and that it is necessary to repay the victims for their losses. And the only way that's going to happen is if, in the course of his incarceration, they go through some mechanism where he has to set aside some money or itemize a source of funds to pay the restitution. Thank you. I have nothing further. Thank you, counsel. Rebuttal? If you look at the definition of sexual penetration and you strike out some of the words in between, it's very clear. It says of any part of a person's body into another person's body. That has to be from one person into another. It has to involve two people. If you focus on that, but how about looking at objects? Isn't the way it's set up, the way the client set it up, he used her fingers as an object. So he penetrated by using, as an object, a penetration of her body. She was the other, and he was using an object, which happened to be her fingers. He did not hold and possess her fingers. He did. By force, he appropriated her fingers as an object to make the penetration. The penetration still did not occur in another person's body. Yes, because we're talking here about objects used to penetrate. He is the one doing it. He finds an object by force, and it's another person he then penetrates. I mean, if he'd used a pencil or whatever, in this case it was fingers he used as an object. I don't see that as the way in which the statute is written. Well, why doesn't it apply? Her fingers are totally in his control. They become an object. They're not totally within his control. She's going to be shot if she doesn't behave. So it's an object. They're no longer part of her body. They're an object in his control, and they're used to penetrate a person's body other than his. I understand Your Honor's proposition. I'm simply saying I don't think that statute is intended to criminalize. I don't think that's the plain meaning of the statute. In other words, I gather your view is that if nothing had happened but he put a gun on her and threatened to kill her, and if she didn't do what he said and she did what he said, and that's it, and he was charged with a crime, no crime would be committed. Not under the language of our statute. That's what I said, Your Honor. The other matter that I intended to address is relative to the motion for new trial. Counsel says that the information about the brother's recantation was not something which was newly discovered after trial. His recantation didn't come about until after trial, and it was not known beforehand, and could not have been known beforehand. Therefore, it is, I believe, properly newly discovered evidence. The third element that was referred to under the Cervantes test, which is that the evidence must not be merely impeaching. This was not something which was merely impeaching. It went to what we believe is the heart of the government's case. And while it is an almost certain occurrence that when a person is asked to identify who is the person responsible during the trial that they all know what the defendant looks like. He's not the one in the suit at the defense table. He's the one who's in other clothing, and they stand up and point to him, but we all know that that's simply just not as strong an identification as it is when you are faced with other persons for whom to select who look similar to the defendant, and you must choose amongst them. That kind of an identification process is stronger. And in the particular instances of the robberies in this case, when that was the circumstance, the witnesses weren't able to do so. Most of the witnesses that did testify at trial were inconclusive of prior identifications. Thank you, Your Honors. Thank you, counsel. Thank you to both counsel for traveling so far for your arguments. We appreciate it.
judges: Silverman, W. Fletcher, Rawlinson